UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JOHN C. TAYLOR                                                                          PLAINTIFF

v.                                                                    CIVIL ACTION NO. 3:04CV-122-S

LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT, et al.            DEFENDANTS

**MEMORANDUM OPINION**

    This matter is before the court on motions of the defendants, Louisville/Jefferson County Metro Government ("Metro") and Teamsters Local 783 (the union"), for summary judgment (DNs 20, 23) in this action alleging employment discrimination.[1]

    A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-

---

[1] The complaint also named Metropolitan Corrections Department, an entity which did not appear in the case. Metro contends that this entity was not properly served. *See*, Motion for Summary Judgment of Louisville/Jefferson County Metro Government, pg. 3, fn.1. The complaint alleges that "Defendant METRO CORRECTIONS DEPARTMENT...is an executive operating unit of Defendant [Louisville/Jefferson County] Metro [Government], charged with the responsibility of housing and securing prisoners, misdemeanants, and those criminally accused, and had been Plaintiff's employer at all times incident hereto." Complaint, ¶3. Louisville/Jefferson County Metro Government admitted this allegation, with the correction that the plaintiff was employed by Metro, not by the Metropolitan Corrections Department. *See*, Answer, ¶7; Summary Judgment Motion of Louisville/Jefferson County Metro Government, pg. 1. Thus the parties agree that Metropolitan Corrections Department is merely an executive unit of Metro. As such, it was improperly named as a party and should be dismissed.

- 2 -

moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

We conclude that there are no genuine issues of material fact and that the defendants are entitled to judgment as a matter of law.

The plaintiff, John C. Taylor, was employed as a corrections officer by Metro from October, 1999 until his termination in March, 2003. Taylor was a member of the union which was a party to a collective bargaining agreement with Metro. The union represented Taylor in matters concerning the terms and conditions of Taylor's employment.

Taylor underwent back surgery in 2001 and 2002 to correct an injury which occurred prior to his employment with Metro. Taylor requested and utilized leave time under the Family and Medical Leave Act ("FMLA") between July 22, 2002 and December 15, 2002. According to the records from the department of human resources, when Taylor returned to work, he had exceeded the twelve-week per year allotment for full time employees by 176 hours, and would not be eligible for additional FMLA leave until July 22, 2003. Taylor testified that when he was released to return to work, Dr. John Harpring and Dr. Mitchell Campbell told him that he was not to have inmate contact when he first returned from his surgeries. Taylor depo., pgs. 11-12.[2] Taylor bid for and was awarded the position of Main Control Operator in June of 2002. He testified that the Control Operator position and work in the property room were jobs that did not involve inmate contact. He stated that working floor security did involve inmate contact. Taylor testified that he was given assignments that complied with his medical restrictions after his first surgery. He stated, however,

---

[2] There does not appear to be any documentation of this medical restriction in the record before the court. However, the court takes the statement as true for purposes of summary judgment.

that after his second surgery, they were "trying to put [him] back on the floor security and they were putting [him] in floor control rooms, which both violate the doctor's orders. And then they put [him] in records, which is an eight-hour sitting job behind a desk at a computer for eight hours, which violated [his] doctor's orders." Taylor depo., pg. 32-33. Taylor never filed a grievance concerning any floor security, floor control room, or records room assignment.

Taylor admitted in his deposition that he had worked a secondary security job in January, 2003 prior to requesting or receiving the required approval. He admitted that he had prior written warnings for tardiness and abuse of sick leave. His approval for secondary security work was admittedly conditioned on his improvement of his work attendance. He also admitted that he called in sick on January 15 and 16, 2003 after he worked shifts of his secondary security position, in violation of departmental policy concerning absences from primary employment. On January 16, 2003, Taylor's secondary security privileges were revoked and an internal affairs investigation was begun. Internal Affairs interviewed Taylor, after affording him the required 24 hours notice of the meeting. Taylor and his union representative questioned the procedures used in conducting that interview, and filed a grievance on the issue. Metro reviewed the matter and denied the grievance in writing on February 14, 2003.

Records obtained from Taylor's secondary employer established that Taylor worked his secondary job on January 8, 9, 15, 16, and 17, while calling in sick to his Metro employment on January 8, 12, 15, and 16 of 2003. It was also established that Taylor worked his secondary employment on February 4, 5, and 6, 2003 after he had been notified that his secondary privileges had been revoked. On February 19, 2003, Taylor's sworn peace officer status was suspended pending the outcome of the internal affairs investigation. He was then temporarily assigned to the records department. On February 24, 2003, Internal Affairs returned a finding that Taylor had violated a number of departmental policies and procedures.

On March 17, 2003, a Disciplinary Action Notice was issued to Taylor, recommending his termination from Metro employment. On that same date, Deputy Chief Otto J. Payne concurred in writing with the recommended termination. The union filed a grievance on Taylor's behalf alleging that his termination was unjust. The union unsuccessfully negotiated for Taylor's reinstatement. Taylor sought submission of his grievance to arbitration, but the union denied his request to proceed further. Taylor appealed the decision to the union Executive Board, and was given an opportunity to argue his position on appeal. On September 25, 2003, the union stated in writing that it was upholding its earlier decision on the ground that "the evidence indicat[ed] that it would be most difficult to win a favorable award."

On October 1, 2003, Taylor filed a charge of discrimination, alleging that he was terminated because he was regarded as having a disability, in violation of the Americans with Disabilities Act ("ADA"). On November 30, 2003, the EEOC dismissed Taylor's charge and he received a right to sue letter.[3]

Taylor filed suit alleging violations of the ADA, the FMLA, the Civil Rights Act §§ 1983 and 1985 through violations of the Due Process and Equal Protection clauses of the 1st, 5th and 14th Amendments to the United States Constitution, and the Rehabilitation Act. Complaint, ¶ 5, 22.

On summary judgment, the plaintiff must come forward with something more than bald conclusory statements to withstand the motion. There must be some evidence to support the claims. "It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings." *Chapman v. City of Detroit*, 808 F.2d 459, 464 (6th Cir. 1986); *Morgan v. Church's Fried Chicken*, 829 F.2d 10 (6th Cir. 1987)("we need not accept as true legal conclusions or unwarranted factual inferences.") With respect to the §§ 1983 and 1985 claims

---

[3] There is a second right to sue letter attached to the complaint bearing the same date of issuance and the file #241-2004-00010. Neither the complaint nor the briefs provide any information concerning this second discrimination charge.

alleging violations of the 1st, 5th, and 14th Amendments, and the Rehabilitation Act claim, there is a complete absence of any factual allegations in the complaint or in the plaintiff's responsive brief and accompanying documents that would support these claims. The plaintiff offers no evidence that his rights to due process and equal protection were denied. He was afforded the opportunity to respond to Metro concerning the allegations against him. He challenged the fact-gathering process in a grievance filed by the union on his behalf. After his termination he filed a second grievance challenging his discharge as unjust. After his grievances were denied, he sought arbitration. He was permitted a hearing on appeal after the union denied his request to arbitrate the grievances. Taylor appears to have pursued virtually every avenue of redress. In fact, Taylor testified in his deposition that he had **no facts** to support his claims that the defendants conspired to cause his termination in violation of the Constitution and the Civil Rights Act. Taylor depo., pg. 61-62. These claims must be dismissed without further discussion. Additionally, there is no mention of the Rehabilitation Act in Taylor's response brief. The court will thus deem this claim abandoned. The remaining claims for violation of the FMLA and the ADA have not been shown to implicate the union. These claims will therefore be dismissed as against it.

The FMLA entitles an eligible employee to as many as twelve weeks of leave during any twelve-month period for a qualifying injury, illness, or impairment. The United States Court of Appeals for the Sixth Circuit has recognized two "theories for recovery under the FMLA: (1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)91); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." *Hoge v. Honda of America MFG, Inc.*, 384 F.3d 238 (6th Cir. 2004).

The only evidence in the case concerning the claim of violation by Metro of the FMLA actually supports dismissal of the claim. The affidavit of Tammy Anderson, Personnel Administrator for Metro Corrections, and the time records establish that (1) Taylor took 656 hours of FMLA leave from July 22, 2002 through December 15, 2002; (2) As a result, Taylor was

ineligible for further FMLA leave until July 22, 2003; and (3) The notation of "FMLA" for January 9, 2003 in Taylor's attendance record was a clerical error.

It is undisputed that Taylor returned from FMLA leave in December of 2002. There is no evidence that he requested additional FMLA leave nor that he filed any grievance alleging violations of work restrictions. He worked a secondary security job, but called in sick to his Metro employment in January and February. There is no evidence to support a claim of retaliatory or discriminatory conduct nor has he shown evidence of interference in violation of the FMLA. Summary judgment must be granted in favor of Metro on this claim.

In order to make out a claim for violation of the ADA, Taylor must show that he is an otherwise qualified individual with a disability, and that Metro failed to provide him reasonable accommodation for that disability. He bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable. *Burns v. Coca-Cola Enterprises, Inc.*, 222 F.3d 247 (6th Cir. 2000), *citing, Monette v. Electronic Data Systems, Inc.*, 90 F.3d 1173 (6th Cir. 1996). Taylor's ADA claim fails on summary judgment for a number of reasons.

First, Taylor has not shown that he was an otherwise qualified individual. The unrefuted evidence establishes that beginning in January of 2003, Taylor was found to have committed violations of policies and procedures relating to his secondary security work. It was established that he worked secondary security initially without the proper authorization. He worked his secondary security position while calling in sick to his Metro employment. He continued to work his secondary job after his secondary security privileges had been revoked. His actions thus caused him to become unqualified for sworn status positions. His sworn status was suspended and he was temporarily placed in a civilian position in the records department pending the outcome of the investigation. He was eventually discharged for having committed such violations. In his deposition testimony, he stated that his sworn status positions in the control room and property room would have accommodated his disability where the records department position did not. However,

no sworn duty assignment would have been reasonable in light of the suspension of his peace officer status.

Second, Taylor's evidence that he was disabled consists of a series of work excuses from February and March, 2003 that he had not been able to work due to back pain on various days. There are two excuses which indicate that he should not engage in prolonged sitting or standing at that time. There is a lack of evidence that Taylor was disabled as that term is defined by the ADA. The ADA requires that he be substantially limited in a major life activity. In this instance, Taylor alleges that he was limited in his ability to work. As noted in *Burns*, *supra.*,

> Because the ADA prohibits [an employer] only from discriminating against a "qualified individual with a disability because of [that] disability," Burns's ability to show that he is "disabled" within the meaning of the statute is a "threshold requirement" for recovery under the Act. *Cassidy v. Detroit Edison Co.,* 138 F.3d 629, 633 (6th Cir. 1998)(quoting 42 U.S.C. § 12112). Again, a plaintiff claiming that he is disabled because of an injury or condition substantially limits his ability to engage in the "major life activity" of working must show that he is "significantly restricted in [his] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person with comparable training, skills, and abilities....As prior decisions of this court and the regulations interpreting the ADA make clear, the "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." [citation omitted].

*Burns*, 222 F.3d at 253. At best, the evidence establishes that for some period of time in late February and in March, 2003, Taylor had back pain and was restricted from sitting or standing for prolonged periods of time at work. This evidence falls far short of establishing a disability under the ADA.

Further, assuming *arguendo* that Taylor was disabled and that Metro knew of his disability, or alternatively, that Metro regarded him as disabled, Taylor must come forward with evidence that his transfer to records and subsequent discharge were based solely on his disability. *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1180 (6th Cir. 1996). Taylor was discharged after he was found to have committed violations of policies and procedures. The suspension of his peace officer status and transfer to the records department as well as his discharge were grounded in the

findings of internal affairs that he violated policies and procedures in connection with his secondary employment. The only documentation concerning his inability to work came in the form of work excuses from doctors dated after the internal affairs investigation had begun. These work excuses bear no relationship to the incidents in January and early February, 2003 for which he was discharged. He has come forward with no evidence that the adverse employment actions of which he complains were based solely on his disability, in light of the documentation relating to his discharge and his own admissions that he, in fact, committed the policies and procedures infractions. Taylor's claim for violation of the ADA must be dismissed.

For the reasons set forth herein, summary judgment will be granted in favor of the defendants and the complaint will be dismissed. A separate order will be entered this date in accordance with this opinion.